**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Milton J. LARGENT,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jonathon B. HIGDON,
Defendant-Appellant.**

**Nos. 76–1285, 76–1286.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 5, 1976.

Decided Dec. 13, 1976.

Certiorari Denied Feb. 22, 1977.
See 97 S.Ct. 1117.

Kenneth A. Webb, Detroit, Mich., for defendant-appellant.

Frederick S. Van Tiem, U. S. Atty., Detroit, Mich., John J. Klein, Sidney M. Glazer, Washington, D. C., Lawrence Leff, John L. Newcomer, Detroit Strike Force, Detroit, Mich., for plaintiff-appellee.

Before WEICK, CELEBREZZE and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

Appellants Largent and Higdon were convicted by a jury in the District Court on two counts of a six-count indictment charging them with the substantive offenses of aiding, abetting, inducing, and causing the use of extortionate means to collect an extension of credit in violation of 18 U.S.C. §§ 891, 894 and 2. Largent was acquitted on three counts of the indictment charging the commission of other substantive offenses. Both Largent and Higdon were acquitted on the count charging conspiracy to commit the substantive offenses.

Largent received concurrent sentences of four years on each count, and Higdon three years. Both sentences were subject to immediate parole eligibility provided in 18 U.S.C. § 4208(a)(2).

In their appeal the principal contentions are that they were denied a speedy trial; that the statutes under which they were indicted were unconstitutional; that the indictment was vague and defective; that the District Court erred in its instructions to the jury and in other rulings; that evidence of defendants' prior similar acts was improperly admitted against them, and in the admission or exclusion of other evidence; and that the attorney for the Government asked improper and prejudicial questions of certain witnesses.

I

Largent and Higdon were partners in a gambling enterprise in Detroit, Michigan. The victims of the extortionate means charged in the indictment were William R. Michael and members of his family. These means were used in efforts to collect a gambling debt owed by Michael to the partners.

Michael became a customer of the partnership in the summer of 1968, and placed bets with them each week on horse races and football games; he would pay his losses once each week. It was not until November, 1968 that Michael lost several large bets on football games and horse races, and was unable to make his weekly payment of losses to the partnership. Michael nevertheless continued to place his bets with the partnership and in early 1969 he owed $15,000 in unpaid losses.

For the next three months appellants were unsuccessful in their repeated telephone calls to collect this large debt from Michael. They then hired Philip Berryman, a known gambling debt collector, to collect the debt from Michael. He (Berryman) had been engaged previously by appellants to collect gambling debts owing to them by other persons. His fee was fifty per cent of whatever he collected, and he was directed to use whatever force was necessary to collect the debt from Michael.

Berryman immediately sought out Michael. Because they did not know Michael's address, Berryman went with Largent to a Detroit funeral home and by trick persuaded a worker there to disclose the address of Michael's son, J. Richard Michael.

Soon thereafter Berryman threatened J. Richard Michael, by telephone, with violence unless he supplied the address and telephone number of his father. The son complied.

Having obtained this information, Berryman began to call Michael and his family on the telephone, sometimes as often as six times a day, threatening them with violence unless the gambling debt was paid. Most of these telephone calls were received by Michael's wife Grace, as he was not living at home during part of the time. At one point Berryman and three associates threw a brick and a molotov cocktail through the windows of Michael's home and fired a pistol into his living room. They also drove a vehicle over his front lawn, damaging the landscaping.

With the threats continuing, Michael obtained police help. In the evening of July 22, 1969 Michael and Maurice Foltz, the Sterling Heights Police Chief, met with Berryman at a bar to discuss the debt. Foltz, posing as Michael's friend, told Berryman that he (Foltz) was responsible for part of the debt. Michael paid Berryman two hundred dollars, partial payment on the debt. Berryman then threatened them if the rest was not paid soon.

Without heeding the warning, Michael continued to stall on payment of the debt. Berryman countered with death threats against Michael's family. After forceful pleas from his family, Michael finally in early August, 1969, paid Berryman five thousand dollars in two twenty-five-hundred-dollar cashiers' checks, at a Detroit race track.

Later in the month appellants and Michael made a settlement under which Michael paid Berryman's friend, Geraldine McNeal, forty-eight hundred dollars in a money order. Thus Berryman received five thousand dollars for collecting the ten thousand dollar gambling debt.

## II

Appellants contend that they were denied their Sixth Amendment right to a speedy trial because the Government had sufficient information by early 1970 to procure an indictment, but it did not obtain the indictment until late 1973, at which time appellants were arrested.

A similar defense was rejected by the Supreme Court in *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The holding in *Marion* was recently reaffirmed by the Supreme Court in the case of *Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). It is clear that the speedy trial provision of the Sixth Amendment commences to run from the date of the arrest and not from a date when an agent of the Government may have learned that a crime was committed. There was no evidence that the delay was occasioned by any intentional device by the Government to obtain a tactical advantage over the defendants; nor were the defendants able to prove substantial prejudice caused by the delay. *United States v. Alred,* 513 F.2d 330 (6th Cir.), *cert. denied,* 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 45 (1975).

## III

It is next contended that 18 U.S.C. §§ 891 and 894 are unconstitutional because they do not require proof of a nexus between the extortionate means and interstate commerce. It is urged that the extortionate means in the present case involved a purely local intrastate activity.

This contention was rejected in *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). The Supreme Court held that Congress, in regulating the class of activities affecting commerce, had the constitutional power to regulate purely local intrastate activities. Thus the constitutionality of Sections 891 and 894 was upheld. *Stephan v. United States,* 496 F.2d 527, 528 (6th Cir. 1974), *cert. denied sub nom., Marchesani v. United States,* 423 U.S. 861, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975).

The type of loan is inconsequential so long as "the actual characteristics of the extension of credit, the accrual of a debt,

and the manifestation of coercion to collect that extension are sufficiently displayed by the evidence presented." *United States v. Andrino,* 501 F.2d 1373, 1377 (9th Cir. 1974).

The evidence in the present case was overwhelming. It was supplied by the defendants' hired enforcer Berryman, who testified for the Government, and also by Michael and by members of his family.

### IV

■ We find no prejudicial error in the court's instructions to the jury, or in its use of the disjunctive instead of conjunctive words.

■ We are also of the opinion that the court did not err in admitting evidence of prior similar acts of the defendants who hired Berryman to commit the acts. Berryman testified that appellants told him to use whatever force was necessary to collect the debt.

■ Evidence of prior misconduct is not admissible to prove the character of a person or another crime, but rather is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evidence 404; *United States v. Faulkner,* 538 F.2d 724, 728 (6th Cir. 1976); *United States v. Wiley,* 534 F.2d 659, 663 (6th Cir. 1976); *United States v. Mahar,* 519 F.2d 1272, 1273 (6th Cir.), *cert. denied sub nom., Harris v. United States,* 423 U.S. 1020, 96 S.Ct. 458, 46 L.Ed.2d 393 (1975); and *United States v. Ring,* 513 F.2d 1001, 1004 (6th Cir. 1975). Generally, this evidence must be substantially similar and near in time to the offense charged, must be in issue, and must have more probative value than prejudicial impact. *United States v. Ring, supra,* at 1004.

Berryman's testimony about his past collection activities for appellants established the fact that these activities were near in time and were very similar to the activities with which appellants were charged. It tended to show a consistent pattern of conduct over the entire time. Also, the appellants' intent as to the crimes was in issue at the trial. The prejudice of admitting this evidence did not outweigh its probative value for the jury. *United States v. Mahar, supra; United States v. Ring, supra;* and *United States v. Nemeth,* 430 F.2d 704, 705 (6th Cir. 1970).

Under 18 U.S.C. § 894, in a conspiracy charge evidence of prior collections is admissible to show some material facts relating to the conspiracy charged. "It would also be relevant to show that they were continuing along the same line in their collections." *United States v. Bonanno,* 467 F.2d 14, 17 (9th Cir. 1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). Clearly, the Government could introduce evidence of Berryman's prior collection activities in order to prove the conspiracy charge.

The court gave an appropriate cautionary instruction and did not err in denying appellants' motion for a mistrial.

■ In our opinion the court did not err in admitting into evidence the tapes of recorded telephone conversations between Michael and Largent, as Michael had consented thereto. *United States v. Franks,* 511 F.2d 25, 30, 31 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975), and also *denied sub nom., Britton v. United States,* 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975); *Stephan v. United States,* 496 F.2d 527, 528 (6th Cir. 1974), *cert. denied sub nom., Marchesani v. United States,* 423 U.S. 861, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975).

■ In our opinion the indictment was not vague. It contained all of the elements of the offenses to sufficiently apprise the defendants of the charge and to provide a basis for a plea of double jeopardy in any subsequent prosecution. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Harris,* 523 F.2d 172, 174 (6th Cir. 1975).

■ We do not find that the District Judge abused his discretion in denying a motion for a bill of particulars and a motion for discovery. The defendants sought the

names of all the Government's witnesses. The motion was overbroad. There was no error in denying the motions. *United States v. Birmley,* 529 F.2d 103, 108 (6th Cir. 1976) (bill of particulars); *United States v. Armes,* 470 F.2d 1353, 1355 (6th Cir. 1972), *cert. denied,* 410 U.S. 967, 93 S.Ct. 1450, 35 L.Ed.2d 702 (1973) (discovery).

■ In our opinion the District Judge did not commit prejudicial error in denying motions for mistrial for alleged prosecutorial misconduct in asking questions to which objections were sustained and appropriate instructions were given.

At most, any error was harmless beyond a reasonable doubt in view of the overwhelming evidence offered at the trial and the cautionary instructions given by the District Court. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Rule 52(a) Fed.R.Crim.P.

Other errors complained of do not merit discussion.

The judgments of conviction are therefore affirmed.