**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ahmed AL-KURNA,
Defendant-Appellant.**

**No. 86-3402
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1987.

Virginia Laughlin Schlueter, Federal Public Defender, New Orleans, La., for defendant-appellant.

Peter G. Strasser, Constantine Georges, Asst. U.S. Attys., John Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Ahmed Al-Kurna appeals his conviction of conspiracy to violate the immigration laws and for submitting a false application to the Immigration and Naturalization Service, 18 U.S.C. §§ 2, 371, and 1546. He contends that the evidence was insufficient to support his conviction and that the district court erred in its instructions to the jury. Finding the evidence sufficient and finding no error in the instructions, we affirm.

*Facts*

Al-Kurna is a native of Kuwait and a citizen of Jordan. As holder of a nonimmigrant student visa, he was permitted to remain in the United States while a student at the University of Southwestern Louisiana in Lafayette, Louisiana.

An immigrant who marries a United States citizen may apply for permanent resident status. The process requires the citizen spouse to file Immigration Form I–130, entitled "A Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa." In addition the alien spouse must file Immigration Form I–485, an "Application for Status as Permanent Resident." These forms must be signed under oath before an immigration officer.

The government offered the testimony of Gloria Smith, who stated that she and one Abdul Wahab Elagamy had arranged nine marriages for aliens. Smith would locate eligible female United States citizens willing to marry aliens. Arrangements would then be made. The arrangements typically included payment to the citizen spouse of $800.00, payable $400.00 at the marriage ceremony, $100.00 after each of two visits to the immigration office, and $200.00 at the time of the divorce, all of which was programmed in advance. Smith and Elaga-

my were compensated for their efforts. Smith further testified that at the request of Elagamy she arranged for a spouse for Al-Kurna. Smith located Mary Benton, a 17–year–old United States citizen, who married Al-Kurna on August 16, 1984, the day she met him and the day after she first met Smith. After the ceremony, Smith received $375.00 from Al-Kurna.

The government also offered the testimony of Mary Baldwin who worked with Benton at a restaurant in Lafayette. Baldwin testified that she informed Benton of Smith's operation. Baldwin was a witness to the marriage ceremony. She stated that Benton left the ceremony not with Al-Kurna but with her. She further testified that Al-Kurna and Benton never lived together. Baldwin admitted that she had been paid to marry an alien and that Smith had made the arrangements.

Mary Benton testified that she had contacted Smith and was told that she would be compensated for marrying an alien. Benton testified that she was told she would receive $400.00 at the marriage ceremony, $100.00 for each of two visits to the immigration office, and $200.00 at the time of her divorce. She stated that she first met Al-Kurna on the day they were married. She further stated that she received $400.00 from Al-Kurna immediately after the ceremony and that she left the ceremony with her friend Baldwin.

According to Benton's testimony, she never resided with Al-Kurna but spent a maximum of 60 minutes at his apartment two days after the ceremony in order to familiarize herself with the apartment and to prepare for questions which might be asked by immigration officials. Benton twice accompanied Al-Kurna to the immigration office in New Orleans.

Finally, the government offered the testimony of the INS officer who received the signatures of Al-Kurna on the I–485 application and Benton on the I–130 petition. In the application, Al-Kurna swore that he and Benton resided at 200 Oakcrest, Apt. 8211, in Lafayette, Louisiana. In her petition, Benton swore that she resided with Al-Kurna at that address.

Al-Kurna offered testimony of two witnesses who were familiar with Moslem marriage customs. As attested to, those customs included the practice of the husband giving his wife, on the date of their marriage, the first of two possible payments. The second payment apparently is made in the event of a divorce. Al-Kurna testified that he is a practicing Moslem and that he intended to live with Benton. He further testified that he did not intend to deceive the government about residing with her.

### Analysis

■ Al-Kurna's first contention is that the evidence was insufficient to support his conviction. We weigh this contention against the standard set forth in *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc):

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

Under 18 U.S.C. § 1546 it is a crime for anyone to "knowingly make[ ] under oath ... any false statement with respect to a material fact in any application ... required by the immigration laws...." A prosecution under this section requires that the defendant (1) knowingly, (2) make a false statement, (3) under oath, (4) in a document required by the immigration laws. It is apparent from the record that all of these elements were proven. Al-Kurna submitted an I–485 application which he signed under oath, knowing that it contained a material false statement. He claimed to be living with his wife, a United States citizen. This was not true. Benton likewise made a false statement in a petition prepared for her signature by Al-Kurna.

The act was done knowingly; it was voluntary and intentional. *United States v. Diecidue*, 603 F.2d 535 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980). The statement was material as it was capable of affecting the functioning of a governmental agency, in this case the INS. *United States v. Lichenstein*, 610 F.2d 1272 (5th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980). The evidence is sufficient to support Al-Kurna's conviction for violating § 1546.

■ The conspiracy charge requires proof of "an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators." *United States v. Avila-Dominguez*, 610 F.2d 1266, 1271 (5th Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980). The government must show that a conspiracy existed, that the defendant was aware of it, and that he associated himself with its objectives. *United States v. Malatesta*, 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). The testimony of Smith, Baldwin, and Benton established the conspiracy. Al-Kurna attempted to convince the jury that the arrangements for the marriage are not uncommon for Moslems. The jury was entitled to accept his explanation or to reject it, for it is the classic function of the jury to make credibility determinations. *United States v. Silva*, 748 F.2d 262 (5th Cir.1984). The jury was free to conclude that Al-Kurna was a willing participant in a conspiracy to defraud the United States. We find the evidence sufficient to support his conspiracy conviction.

■ Al-Kurna further contends that the court erred by refusing to give requested jury instructions. He maintains that the district court should have instructed the jury on his subjective intent to enter into a valid marriage. Al-Kurna was not convicted of making a false statement about the actual validity of his marriage. Rather, he was convicted of falsely stating that he was residing with his wife. The validity *vel non* of his marriage was not material to the determination whether he was guilty of either of the offenses charged. The trial court did not err in declining to give this instruction. *United States v. Hunt*, 794 F.2d 1095 (5th Cir.1986); *United States v. Grissom*, 645 F.2d 461 (5th Cir.1981).

■ Finally, we find no merit in the suggestion that the district court erred by referring to Mary Benton Al-Kurna by her maiden name during jury instructions. The court properly instructed the jury that the government did not dispute the validity of the marriage. Further, defense counsel referred to Al-Kurna's wife as Mary Benton several times during the trial. The indictment identified Al-Kurna's citizen wife as Mary Benton. The district court did not err by referring to her as Mary Benton, the name by which she was identified throughout the proceedings.

AFFIRMED.