**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bruce ZALMAN (87–6183), and Mohammad Sharifinassab (87–6178),
Defendants-Appellants.**

**Nos. 87–6178, 87–6183.**

United States Court of Appeals,
Sixth Circuit.

Argued July 22, 1988.

Decided Feb. 23, 1989.

Rehearing in No. 87–6178 Denied
April 3, 1989.

Rehearing and Rehearing En Banc in No.
6183 Denied April 25, 1989.

---

1. La.C.C. arts. 2534, 2546.

2. *See, e.g.,* Restatement (Second) of Judgments § 27 comment c, illustration 6.

Alan W. Roles (argued), Scott T. Wendelsdorf, Ogden and Robertson, Louisville, Ky., Carter G. Phillips, Mark D. Hopson (argued), Washington, D.C., for defendants-appellants.

Joseph Whittle, U.S. Atty., Louisville, Ky., Cleveland Gambill, William F. Campbell (argued), for U.S.

Before MERRITT, KRUPANSKY and BOGGS, Circuit Judges.

KRUPANSKY, Circuit Judge.

Bruce Zalman (Zalman) and Mohammad Sharifinassab (Sharifinassab), defendants-appellants, have appealed from their respective criminal convictions following a jury trial before the United States District Court for the Western District of Kentucky.

Zalman and Sharifinassab were indicted by a federal grand jury for the Western District of Kentucky on May 6, 1986. Zalman was charged with two counts of aiding and abetting several individuals to make false statements to, and/or conceal material facts from, the Immigration and Naturalization Service (INS) in violation of 18 U.S.C.A. §§ 2 and 1001;[1] and three counts of conspiring to defraud the INS by arranging fraudulent marriages for various Iranians to permit them to remain in the United States as permanent resident aliens, in violation of 18 U.S.C.A. §§ 1001 and 371.[2] Sharifinassab was charged with one count of conspiring with Zalman to arrange a sham marriage in violation of 18 U.S.C.A. §§ 371 and 1001, and one count of making false statements to, and/or concealing material facts from, the INS in his application for permanent resident status, in violation of 18 U.S.C.A. § 1001. Zalman and Sharifinassab were jointly tried before a jury, which convicted them on all counts.

The record of the trial disclosed the following underlying facts. Zalman, an attorney who had practiced in the Louisville, Kentucky area and had taught law at the University of Louisville, had a reputation in the Iranian community as an individual who would arrange fictitious marriages to gain permanent residence status for Iranians upon the expiration of their temporary student visas. Zalman's fee for his services ranged between $1,000 and $1,500, for which payment he would arrange a pseudo marriage with an eligible female, who would herself be paid between $500 and $1,000. In addition, Zalman would rehearse the "couple" as to a course of conduct calculated to mislead INS officials reviewing the circumstances of the marriage; namely, the manner in which to complete INS application forms so as to mislead the INS; the manner in which to respond to

---

1. Section 2 states:

   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

   (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

   18 U.S.C.A. § 2 (West 1969). Section 1001 holds that:

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined no more than $10,000 or imprisoned not more than five years, or both.

   18 U.S.C.A. § 1001 (West 1976).

2. Section 371 reads as follows:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   18 U.S.C.A. § 371 (West 1966).

INS oral inquiries and interrogations; the manner in which to project the appearance of a valid marriage, i.e., moving the wife's clothing and personal items into the husband's residence; appearing publicly together; and other acts designed to further the charade of a valid marriage.

In anticipation of the expiration of his student visa in August, 1980, Mansour Kazemi (Kazemi) had requested assistance from Zalman to extend his residency in the United States.[3] The two discussed gaining both permanent residency and citizenship for Kazemi. Zalman eventually arranged a delusive marriage between Kazemi and Deborah Gebhardt (Gebhardt), one of Zalman's divorce clients. Zalman instructed the couple in all of the deceptive practices calculated to divert INS suspicions, for a fee of $1,000.00 plus an additional payment of $1,000.00 to Gebhardt for participating in the fraudulent marriage.

The marriage ceremony occurred on July 8, 1980 in Tennessee. Within two weeks of the wedding, Gebhardt requested Zalman to initiate divorce proceedings against Kazami so she could marry another individual. Zalman refused and insisted that she remain married to Kazami for at least six months to insure against arousing the suspicions of the INS that the nuptials were a fraud. Gebhardt acceded to Zalman's instruction on this matter and her requested divorce was deferred. At the joint trial of Zalman and Sharifinassab, both Kazemi and Gebhardt testified that the marriage was a counterfeit, entered into only to permit Kazemi to gain permanent resident status.

In 1981, Zalman was introduced to Gholam Mohammadzadeh (Mohammadzadeh), whose student visa was about to expire.[4] Zalman arranged for Mohammadzadeh to enter into a bogus marriage with Gabrielle Goren (Goren) and provided the "couple" with instructions designed to convey the appearance of a proper and valid marriage. Specifically, Zalman counseled the "couple" to familiarize themselves with each other's families, to have a honeymoon, to move some of Goren's personal items into Mohammedzadeh's apartment, and to correspond with each other. In return for these arrangements, Mohammadzadeh paid Zalman and Goren $1,000.00 each.

Goren and Mohammadzadeh were married within fifteen minutes after their introductions to each other. The "couple" traveled to Florida for a honeymoon, as suggested by Zalman. However, Mohammadzadeh occupied his own room, while Goren and her mother occupied a separate room. Subsequently, Mohammadzadeh returned to college in Michigan, and Goren and her mother returned to their home in Kentucky. Mohammedzadeh and Goren never resided together nor did they consummate the marriage. Both Mohammadzadeh and Goren testified at trial that the marriage was a pretext, arranged only to permit Mohammadzadeh to obtain his permanent residency status.

Sharifinassab, an appellant herein, had entered the United States in 1977 on a student visa, which permitted him to remain in the United States until he received his degree in engineering scheduled for December 15, 1981.[5] Sharifinassab con-

---

**3.** Zalman was charged with one count of conspiring with Kazemi, to defraud the INS, by arranging a sham marriage between Kazemi and Deborah Gebhardt in order for Kazemi to gain both permanent residency and eventually citizenship.

**4.** Zalman was indicted for one count of conspiring with Mohammadzadeh, to defraud the INS, by arranging a sham marriage between Mohammadzadeh and Gabrielle Goren in order to enable Mohammadzadeh to gain permanent resident status; and one count of aiding and abetting Mohammadzadeh in making a false statement, or concealing material information, in

the application for permanent residency which Mohammadzadeh filed with the INS.

**5.** Zalman and Sharifinassab were both indicted on one count of conspiring with the other to defraud the INS, by entering a sham marriage in order to permit Sharifinassab to fraudulently gain permanent resident status. Additionally, Zalman was charged with one count of aiding and abetting Sharifinassab in submitting false statements, or in concealing material information, to the INS in his application for permanent resident status, and Sharifinassab was charged with one count of making false or fraudulent statements to the INS in his permanent residency application.

tacted Zalman in May or June of 1981 seeking assistance to remain in this country beyond his December 15, 1981 student visa expiration date.

Zalman advised Sharifinassab that he had three options by which to accomplish his purpose: political asylum; professional employment status in a specialized field; or marriage to an American citizen. Sharifinassab could not qualify for either asylum or professional employment status, and thus his only remaining option was a marriage to a citizen of the United States.

Since Sharifinassab had no girlfriend who was a citizen of the United States, Zalman suggested an introduction to a young woman who would agree to marry him in exchange for the payment of $500.00. Zalman proposed that Sharifinassab pay Zalman a fee of $1,000.00 for arranging the marriage and for performing the additional services preliminary to acquiring permanent residency status. Sharifinassab agreed to the arrangement, and in June, 1981, Zalman introduced him to a young woman named Kellie Baker (Baker) at his office.

Sharifinassab and Baker were married on October 1, 1981 in a wedding ceremony performed in Tennessee. There was testimony at the trial that Sharifinassab had cashed a check in the amount of $500 the day of the wedding. Although Sharifinassab asserted that he used this money for various wedding expenses, contradictory testimony at the trial indicated that the money had been paid to Baker as part of the agreement to enter into the mock marriage. Immediately after the wedding ceremony had been performed, Sharifinassab presented Zalman with a check for an additional $1,000.00.

After the wedding, Baker moved some of her clothing into Sharifinassab's apartment, and attended several social functions with him. However, both of Baker's roommates, who worked with her at a massage parlor, testified at trial that, after the wedding ceremony in October, 1981, Baker had

continued to reside with them until December, 1982 in an apartment which the three of them had been sharing.[6] Additionally, the roommates testified that most of Baker's clothes and belongings remained at the apartment, that Baker stored groceries at the apartment and that she continued to pay her pro rata share of the rent and other living expenses. They also testified that male companions of Baker's, other than Sharifinassab, had frequently shared Baker's bedroom with her during the time period here in issue.

In December, 1981, Sharifinassab prepared and filed an application with the INS seeking permanent resident status, based upon his marriage to Baker. Testimony was presented that Zalman reviewed the application and advised Sharifinassab and Baker as to appropriate responses to be given to INS investigators concerning their marriage. The INS subsequently granted permanent residency status to Sharifinassab. Thereafter, in August or September of 1982, Baker filed for and was granted a separation from Sharifinassab, which was amended to a dissolution of the marriage in June, 1983. Zalman represented Baker during the dissolution proceedings.

Sharifinassab and Zalman were indicted by a federal grand jury for the Western District of Kentucky on May 6, 1986. The two defendants were jointly tried before a jury. On July 16, 1987, the jury convicted Sharifinassab and Zalman on all counts charged in the indictment. Both defendants timely appealed from the judgment of conviction entered pursuant to the jury's verdicts.

On appeal, Sharifinassab has argued that since the indictment was anchored in the assumption that he was in the United States illegally, the enactment of the Immigration Reform and Control Act of November 10, 1986, 8 U.S.C.A. § 1255a (West Supp.1988), divested the district court of jurisdiction to entertain the criminal charges against him because the Act mandated the Attorney General to adjust

---

**6.** Baker committed suicide after testifying before the grand jury, but before the criminal trial had begun; the district court barred the use of Baker's grand jury testimony at the criminal trial.

his status to that of a lawfully admitted resident which, pursuant to a legal fiction conceived by his attorney, veiled Sharifinassab with amnesty from criminal prosecution, which he accepted.[7] Although the Act does not in fact confer authority upon the Attorney General to *retroactively* adjust an alien's status in any manner, including that of temporary residence, Sharifinassab nevertheless hypothecated that the Act retroactively legalized his resident status upon his satisfying its requirements.[8] He thereafter proceeded from this false premise to argue that since he had attained legal alien status by virtue of the Act by the time he married Kellie Baker, and if the marriage was valid in all respects, then, in that event, his application for permanent residence status after the marriage was proper and he would have, as a result of the valid marriage, been a legal resident alien in the United States. Conversely, he reasons that if his marriage was a fraud, then his residence status thereafter would have been that of an illegal alien and the Act conferred amnesty upon him, the fiction read into the Act by his attorney, which would have shielded him from prosecution under the indictment. Consequently, he argued, the indictment should have been dismissed.

The language of the Immigration Reform and Control Act of 1986 discloses that it was enacted to adjust the *status* of an individual for immigration purposes, and it makes no mention whatsoever concerning the government's authority to prosecute aliens for criminal activity or to grant amnesty from criminal or civil actions of any kind. The Act fails to incorporate, either directly or by inference, any reference whatsoever to a grant of amnesty to aliens who have committed crimes while in the United States. Nor does the Act, directly or by inference, shield aliens from criminal prosecutions of any kind. Furthermore, an examination of the legislative history of the statute indicates that Congress had not intended the Act to serve as a vehicle for conferring amnesty to aliens who had committed crimes while in the United States. To the contrary, from an examination of the legislative history of the Act it is apparent that it was made applicable only to individuals who had entered the country illegally but who had otherwise abided by the laws of the country during their illegal residency.

The Committee believes that any equitable proposal for immigration reform must address the large population of undocumented aliens living and working in the United States, many for a long period of time. Therefore, the bill requires the Attorney General to grant *legal status* to those aliens who have been in the United States a substantial number of years, have developed equities here, *and have abided by the laws of this country.*

. . . .

---

**7.** The 1986 Act makes no direct, indirect or inferential reference to any grant of amnesty from criminal or civil prosecution of any kind. Instead it merely directs that the "Attorney General shall adjust the status of an alien lawfully admitted for temporary residence" provided that the alien meets specific requirements. 8 U.S.C.A. § 1255a (West Supp.1988). For the legislative history behind the adoption of the Immigration Reform and Control Act of 1986, along with a discussion of the eligibility requirements contained therein, see generally H.R.Rep. No. 99–682 at 71–72, *reprinted in* 1986 U.S.Code Cong. & Ad.News 5649, 5675–76.

**8.** Subsequent to his indictment on May 6, 1986, Sharifinassab filed a timely application under the 1986 Reform Act with the INS, requesting the Attorney General to adjust his status to that of a temporary resident alien. The INS initially accepted his application on May 15, 1987, before his criminal trial in the district court had commenced. Sharifinassab notified this court, by letter dated November 11, 1988, that the INS had since reconsidered its initial decision of May 15, 1987 and, upon reconsideration, had denied his application for Temporary Resident Status under the 1986 Reform Act as of November 1, 1988.

It is not clear what effect the INS's decision of November 1, 1988 had upon Sharifinassab's allegation that he was a legal alien at the time of his criminal trial as a result of the initial acceptance of his application under the 1986 Reform Act. Sharifinassab has indicated that he would appeal the INS's latest determination. This court will assume *arguendo* that Sharifinassab was legitimately within the ambit of the Immigration Reform and Control Act during the pendency of the criminal proceedings in the district court below for the purpose of considering his charge that the Act constituted a grant of amnesty from criminal prosecution.

Technical and documentary grounds of exclusion are automatically waived. The remaining grounds of exclusion may be waived by the Attorney General for humanitarian purposes, to ensure family unity, or when it is in the national interest. *However, the grounds of exclusion relating to violations of the law or engaging in the persecution of others may never be waived.*

H.R.Rep. No. 99–682 at 71–72, *reprinted in* 1986 U.S.Code Cong. & Ad.News 5649, 5675–76 (emphasis added). Accordingly, appellant's jurisdictional argument is without merit.

■ Sharifinassab has also urged that the district court erred in denying his motion to sever his trial from that of his co-defendant, Zalman. A motion for a severance, governed by Rule 14 of the Federal Rules of Criminal Procedure,[9] "is left to the discretion of the trial court, and the denial of a severance 'will not be disturbed on review unless the district court abused its discretion in denying the motion.'" *United States v. Swift*, 809 F.2d 320, 322 (6th Cir.1987) (quoting *United States v. Gallo*, 763 F.2d 1504, 1524–25 (6th Cir. 1985), *cert. denied sub nom. Graewe v. United States*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986)); *accord Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Whitley*, 734 F.2d 1129, 1139 (6th Cir.1984). "A general rule in conspiracy cases is that persons jointly indicted should be tried together. This is particularly true where the offenses charged may be established against all of the defendants by the same evidence." *United States v. Robinson*, 707 F.2d 872, 879 (6th Cir.1983); *accord United States v. Horton*, 847 F.2d 313, 317 (6th Cir.1988). In order to justify reversal of a criminal conviction upon a district court's denial of a motion to sever, the defendant has the burden of proving that substantial prejudice resulted from the court's failure to grant a separate trial.

*Robinson*, 707 F.2d at 879; *Gallo*, 763 F.2d at 1525; *United States v. Bibby*, 752 F.2d 1116, 1123 (6th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).

■ In the instant appeal, Sharifinassab asserted that the district court erred in refusing to grant a severance because testimony against Zalman disclosed two counts of conspiracy and two counts of aiding and abetting which testimony, although it did not apply to him, would prejudice the jury against him by virtue of his association with Zalman. "Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, prove substantial prejudice in the latter's trial." *Gallo*, 763 F.2d at 1525. "[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately." *Swift*, 809 F.2d at 323 (quoting *United States v. Frazier*, 584 F.2d 790, 795 (6th Cir.1978)); *United States v. Thomas*, 728 F.2d 313, 319 (6th Cir.1984). Furthermore, the district court in the instant case instructed the jury that it was not to consider the evidence which was presented as proof to support the criminal counts against Zalman which did not involve Sharifinassab. "The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985); *accord United States v. Busacca*, 863 F.2d 433, 437 (6th Cir.1988) ("A reviewing court must presume that the jury followed the judge's instructions."); *see also Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). Sharifinassab has failed to demonstrate any evidence to

---

**9.** Rule 14 states, in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information ... the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Crim.P. 14.

suggest that the jury failed to understand or follow the district court's instruction on this issue, and consequently, this assignment of error is not well taken.

Sharifinassab has additionally alleged that the district court erred in denying his motion for judgment of acquittal because the indictment failed to state a criminal offense. The indictment charged that Sharifinassab had conspired with Zalman to conceal the actual purpose of his marriage from the INS in Sharifinassab's application for permanent residency. Sharifinassab argued that since a marriage is presumed to be valid on its face, the purpose for the marriage is not a "material fact" punishable under criminal statutes.

■ The courts which have examined this issue have concluded, with virtual unanimity, that the underlying purpose of a marriage is a material fact which bears upon the validity of the marriage, and that any false or fraudulent misrepresentation regarding the actual purpose of a marriage in order to gain status as a resident of the United States can be punished under 18 U.S.C.A. § 1001. "The theory underlying the concealment charge is that the intention of the parties to the marriage to limit their relationship is a material fact under the immigration law." *United States v. Lozano*, 511 F.2d 1, 4 (7th Cir.), *cert. denied*, 423 U.S. 850, 96 S.Ct. 94, 46 L.Ed.2d 74 (1975); *accord United States v. Yum*, 776 F.2d 490, 493 (4th Cir.1985); *Johl v. United States*, 370 F.2d 174, 177 (9th Cir. 1967); *United States v. Rubenstein*, 151 F.2d 915, 919 (2nd Cir.), *cert. denied*, 326 U.S. 766, 66 S.Ct. 168, 90 L.Ed. 462 (1945); *see also United States v. Qaisi*, 779 F.2d 346, 348 (6th Cir.1985) (conviction under 18 U.S.C.A. § 1001 for making false statement to INS about viability of marriage reversed and remanded for dismissal because "the indictment did not charge a sham marriage."); *United States v. Bartle*, 835 F.2d 646, 647 (6th Cir.1987) (conviction for making false statement on application for permanent resident status to the effect that he was living with spouse prior to filing for permanent resident status), *cert. denied*, — U.S. —, 108 S.Ct. 1245, 99

L.Ed.2d 443 (1988); *cf. Lutwak v. United States*, 344 U.S. 604, 610–12, 73 S.Ct. 481, 485–86, 97 L.Ed. 593 (1953). The defendant's contention that the indictment for falsely or fraudulently concealing the actual purpose of the marriage failed to state an actionable offense is incorrect. Accordingly, the judgment against Sharifinassab is affirmed.

■ Zalman was convicted on two counts of aiding and abetting aliens in submitting false information to or concealing material information from the INS on applications for permanent resident status, in violation of 18 U.S.C.A. §§ 2 and 1001, and of three counts of conspiring with aliens to defraud the INS by submitting false information to or concealing material information from INS on applications for permanent residence or citizenship, in violation of 18 U.S. C.A. §§ 371 and 1001. Section 1001 is phrased in the disjunctive and its violation is satisfied by proof that the accused either made a false or fraudulent statement *or* concealed a material fact from a department or agency of the United States. *See, e.g., United States v. Tobon–Builes*, 706 F.2d 1092, 1096–97 (11th Cir.1983); *United States v. Irwin*, 654 F.2d 671, 978–79 (10th Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). *See generally* Goldstein, *Conspiracy to Defraud the United States*, 69 Yale L.J. 405, 454 (1959). The district court in the instant case charged the jury in the alternative concerning the section 1001 offense, instructing that it could convict Zalman under the aiding and abetting counts if it found that he had aided and abetted his Iranian clients *either* in filing false information with *or* in concealing material facts from the INS. Similarly, the court instructed the jury that it could convict Zalman under the conspiracy counts if it concluded that he had conspired with the aforenamed Iranians *either* to file false information with *or* conceal material information from the INS.

In the case at bar, the "filing of false information" element of the section 1001 counts addressed the responses which Zalman's Iranian clients had provided on INS

Immigration Form 1–485 to the questions "are you married?" and "do you [and your spouse] reside together?" *See, e.g., United States v. Bartle,* 835 F.2d 646, 647 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1245, 99 L.Ed.2d 443 (1988); *see also United States v. Al–Kurna,* 808 F.2d 1072, 1073 (5th Cir.), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1909, 95 L.Ed.2d 515 (1987). Zalman has conceded the propriety of the jury instruction that permitted his conviction pursuant to section 1001 upon the government's proof that he had aided and abetted, and/or conspiracy with an alien in falsely responding to these two questions. Accordingly, there is no issue raised by Zalman concerning the district court's instruction to the jury on that charge.

■ However, Zalman has charged as error the trial court's failure to instruct the jury as to the government's burden to prove that he and/or his Iranian clients had a duty to disclose the purposes of their marriages as they related to attaining permanent resident status, and that he was improperly convicted of "concealing material facts concerning a sham marriage," because he had no independent duty to disclose that information. Zalman was correct in asserting that in order to support "concealment of material information" from a government agency or department under section 1001, the government was required to prove that Zalman or his clients had a duty to disclose the particular information which was concealed from the government. *See, e.g., United States v. Larson,* 796 F.2d 244, 246 (8th Cir.1986) ("[W]e hold that [the defendant] cannot be guilty of concealing material facts unless there was a duty to disclose the facts."); *United States v. Hernando Ospina,* 798 F.2d 1570, 1578 (11th Cir.1986) ("It is clear that in order to support a section 1001 concealment conviction there must be a legal duty to disclose the facts the defendant was convicted of concealing."); *see also United States v. Anzalone,* 766 F.2d 676, 683 (1st Cir.1985); *United States v. Irwin,* 654 F.2d at 678. Zalman's suggestion that the district court erred in failing to charge the jury as to this element, however, is misplaced because the issue of duty, which

has been imposed by judicial *stare decisis,* and proof thereof is not a question of fact to be decided by a jury. It is, to the contrary, a question of law properly considered and determined by the court. *See, e.g., United States v. Tobon–Builes,* 706 F.2d 1092, 1097 (11th Cir.1983); *Irwin,* 654 F.2d at 678; *cf. Kungys v. United States,* 485 U.S. 759, ——, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988) (analogous issue of materiality is question of law to be decided by the court); *United States v. Chandler,* 752 F.2d 1148, 1150 (6th Cir.1985) (Analogous issue of "[m]ateriality under § 1001 is a question of law."); *United States v. Adadi,* 706 F.2d 178, 180 (6th Cir.) ("[T]he materiality issue in a section 1001 prosecution should be treated as a question of law."), *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983). Consequently, there was no requirement imposed upon the trial court to instruct the jury as to the issue of duty as an element of the concealment offense.

■ In the alternative, Zalman has asserted that even if the issue of duty was one of law to be decided by the court, the government neither alleged nor proved that Zalman or his clients had any legal duty to disclose the information that served as the basis for his convictions. In the case at bar, however, the "concealment of material information" offense incorporated into § 1001 related to Zalman's efforts, if any, that had constituted aiding and abetting, and/or conspiracy with, his Iranian clients in concealing material information from the INS concerning the truthfulness of the answers which had been submitted by the Iranians to the two critical controversial questions which appeared on the permanent residency application Form I–485, namely "are you married?" and "do you [and your spouse] reside together?" Thus the burden of proof to support the government's charged offense of "concealment" including the element of the duty to disclose the purpose of the marriage was identical to the government's already satisfied burden to prove the "felony of false information" charge of § 1001. Accordingly, since the judicially imposed proof of duty,

as it relates to the concealment charge, was in the case at bar identical to the evidence that concededly supported the charge of filing false information, Zalman's suggestion that the government failed to introduce any evidence to support a conclusion that there was a duty to advise the INS of the fictitious purposes of the marriages in question under the "concealment of material information" charge is without merit.[10]

■ Zalman has additionally urged that the district court erred in permitting testimony that he had interrogated various women concerning their willingness to enter into a sham marriage with an alien for a monetary consideration to be admitted during his trial. The district court concluded that the testimony was within an exception to Federal Rule of Evidence 404(b),[11] and allowed the testimony. Zalman urged that, because he had offered to stipulate the issue of his intent to commit the alleged offenses, the testimony did not relate to a matter in issue and was thus inadmissible. *See, e.g., United States v. Ismail,* 756 F.2d 1253, 1259 (6th Cir.1985); *United States v. Largent,* 545 F.2d 1039, 1043 (6th Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977). This argument is incorrect for several reasons.

An examination of Zalman's stipulation demonstrated that it was conditioned upon the government's acquiescence. The government, however, rejected the stipulation. Zalman cannot now allege as error the government's refusal to accept the stip-

ulation. *See Allen v. Morris,* 845 F.2d 610, 616 (6th Cir.1988) ("[D]efendant's] trial counsel pursued a deliberate trial strategy which failed.") (quoting *Trussel v. Estelle,* 699 F.2d 256, 262 n. 4 (5th Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983)), *cert. denied,* —— U.S. ——, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989); *see also Taylor v. Illinois,* 484 U.S. 400, ——, 108 S.Ct. 646, 657, 98 L.Ed.2d 798 (1988) ("The client must accept the consequences of the lawyer's [strategic] decision[s]" relating to evidentiary matters.); *cf. United States v. Ramos,* 861 F.2d 461, 468–69 (6th Cir.1988).

Moreover, the district court had admitted the testimony at issue, not merely to demonstrate Zalman's intent, but also to prove the existence of a common plan or scheme relating to the offenses. *See United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982) (relevant to demonstrate "the common scheme or history of the crime") (quoting *United States v. McDaniel,* 574 F.2d 1224, 1227 (5th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979)); *Largent,* 545 F.2d at 1043 (relevant "to show a consistent pattern of conduct over the entire time."); *see also McCormick, Evidence* § 100 (2nd ed.1972) (relevant to prove the "existence of a larger continuing plan, scheme or conspiracy, of which the present crime on trial is a part."), *quoted in United States v. Passarella,* 788 F.2d 377, 384 (6th Cir.1986). Because Zalman has not charged that the testimony was inadmissible for the purpose of prov-

---

10. Because both the "duty to disclose" and the "concealment of material information" constituted the same generic offense in the instant case, no error resulted from the trial court's failure to instruct the jury that it was required to unanimously agree on one of the two alternative elements that constitute a violation of § 1001. *See, e.g., United States v. McGuire,* 744 F.2d 1197, 1202 (6th Cir.1984) (It is well established that no specific instruction as to jury unanimity is required where "potentially devisive theories of liability are not 'conceptually distinct.'"), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985); *see also United States v. Busacca,* 863 F.2d 433, 438 (6th Cir. 1988) (No special instruction regarding jury unanimity needed where the charge "creates, one generic offense ... that can be proven in two different ways."); *United States v. Bouquett,* 820 F.2d 165, 169 (6th Cir.1987) ("[T]his court

does not require jurors to agree unanimously as to a theory of guilt where a single generic offense may be committed by a variety of acts."); *United States v. McPherson,* 782 F.2d 66, 68 (6th Cir.1986) (same). *See generally United States v. Duncan,* 850 F.2d 1104, 1110–15 (6th Cir.1988).

11. Rule 404(b) states:

   **(b) Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

   Fed.R.Evid. 404(b).

ing a common plan, the assignment of error is not well taken.

■ Zalman has further asserted that the district court erred in not dismissing the count anchored in a conspiracy with Kazemi to obtain citizenship by means of a fraudulent marriage as barred by the applicable statute of limitations. The statute of limitations for prosecutions initiated pursuant to 18 U.S.C.A. § 371 is five years from the date of the commission of the last overt act in furtherance of the conspiracy. *See* 18 U.S.C.A.. § 3283. It was undisputed that Zalman's last contact with Kazemi had taken place on or about May 6, 1981. In 1985, after moving from Kentucky to California, Kazemi visited an immigration consulting agency in Los Angeles, requesting assistance in obtaining United States citizenship. After the agency had advised him that the INS might question the validity of his earlier marriage to Gebhardt, Kazemi decided not to file an application for citizenship.

Zalman has argued that, because his last contact with Kazemi occurred in 1981 and since the superseding indictment was not issued until April of 1987, the district court erred in not dismissing the count alleging a conspiracy with Kazemi as barred by the statute of limitations. Zalman has urged this court to reject the 1985 request for assistance from the immigration consulting agency as an overt act, because his contact with Kazemi ended in 1981, and any conspiracy which may have existed between himself and Kazemi ended at that time. In response, the government countered that the last overt act occurred in 1985 when Kazemi undertook, without Zalman's assistance or knowledge, to receive advice and assistance from the immigration consulting agency in Los Angeles with a view toward obtaining citizenship, which exploration was well within the five year statute of limitations.

A careful review of the evidence presented leads to the conclusion that the government failed to prove any nexus between the earlier conspiracy between Zalman and Kazemi in 1981 and the subsequent actions independently undertaken by Kazemi's Los Angeles inquiry concerning the possibility of applying for citizenship in 1985, some

four years after his last contact with Zalman. The action taken by Kazemi was too remote to support a charge of conspiracy to obtain citizenship and, accordingly, the district court erred in not dismissing count number 1 of the superseding indictment of May 5, 1987, which charged that Zalman had conspired with Kazemi to assist him in gaining citizenship.

This court has considered the defendants' remaining assignments of error and has concluded that they are without merit. Accordingly, the judgments of conviction entered against the defendant Sharifinassab are hereby AFFIRMED. The judgments of conviction entered against Zalman are hereby AFFIRMED, with the exception of the judgment arising from his conviction on count 1 of the superseding indictment of May 4, 1987 which is hereby REVERSED and REMANDED with an instruction to enter a judgment of acquittal as to that count.

MERRITT, Circuit Judge, concurring.

I concur in all respects in the result reached by the Court. I would not reach the merits of the issue of the precise limits of Zalman's duty to disclose the sham nature of the marriages in question because this issue was not properly raised in the court below by objection to the instructions to the jury, or on motion for judgment of acquittal, or otherwise.

It is clear from the record in this case that Zalman must have known that anyone who read the documents submitted would be misled about the nature and legitimacy of the marriages he caused his clients to enter. The failure to disclose the fact that the entire purpose of the marriages was to circumvent the immigration law constituted a fraud. It was a fraud because Zalman knew that, without more, the reader would be misled by the documents. The investigator would assume certain facts and purposes which were not true. The duty to disclose arises because the lawyer knew that the facts as stated, were highly misleading and in context, amounted to fraud.

Zalman cannot now have his conviction reversed, as he seems now to contend, because the District Court did not define precisely for the jury the origin of the duty to

disclose, or the reason the law creates such a duty, or its limits. My reading of the record and the briefs of the parties indicates that Zalman never asked for a definition of the duty to disclose, never objected to the instruction on this ground and never claimed that the situation did not raise such a duty. He, therefore, has waived his objection on this ground by his failure to raise it.

Neither do we have plain error here, as Zalman contends, because the failure of the District Court to be more precise "does not affect substantial rights [and therefore] shall be disregarded." Rule 52(a), Fed.R. Crim.P. The proof was overwhelming, as Judge Krupansky makes clear. Every lawyer knows that he may not participate with his client in the commission of a crime. What is misleading is a matter of context, and the existence of a duty to disclose arises from the situation. Here the lawyer did not overlook the true facts or act negligently because of the press of business. The proof that he deliberately chose to conceal the real facts on the documents is clear. Only if we hold that the lawyer had no duty to be truthful in submitting the documents could we justify setting aside the convictions. To so hold would turn the "plain error" doctrine on its head.