**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 05-5024**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JASON R. PEARSON,

Defendant - Appellant.

———————————

**No. 05-5025**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FRANKLIN L. STINNETT,

Defendant - Appellant.

———————————

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (CR-05-53)

———————————

Argued:  October 27, 2006          Decided:  March 13, 2007

———————————

Before WILKINS, Chief Judge, and WIDENER and MOTZ, Circuit Judges.

————————

Affirmed by unpublished per curiam opinion.

————————

**ARGUED:** David Lassiter, Jr., JEFFERSON & LASSITER, Richmond, Virginia; Reuben Voll Greene, Richmond, Virginia, for Appellants. Brian Lee Whisler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Richmond, Virginia, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jason R. Pearson and Franklin L. Stinnett appeal their convictions for making a false statement in connection with the purchase of a firearm, see 18 U.S.C.A. § 922(a)(6) (West 2000), and making a false statement regarding information required to be kept by a licensed firearms dealer, see 18 U.S.C.A. § 924(a)(1)(A) (West Supp. 2006). Stinnett additionally appeals his convictions for being a felon in possession of a firearm, see 18 U.S.C.A. § 922(g)(1) (West 2000), and influencing a witness to provide false testimony, see 18 U.S.C.A. § 1512(b)(1) (West 2000). For the reasons set forth below, we affirm.

I.

On July 10, 2004, Stinnett visited a former girlfriend, Edwina Newsom, while she was at her mother's home babysitting her younger brothers. Later, Tianna Odom arrived, and Stinnett, Newsom, and her brothers left with Odom in Odom's vehicle. The group traveled to the north side of Richmond, Virginia, making one stop to pick up Pearson, and eventually arrived at a high school parking lot where they met two unidentified men. Stinnett gave Newsom approximately $100 in cash, while Pearson gave her $20. Stinnett and Pearson got into a second vehicle with the two men.

The entire group drove to a gun show, where Newsom paid for her admission and Stinnett's. Agents for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) observed the group as they

3

entered and wandered about the show. Stinnett eventually approached the Rabbit Ridge Enterprises table and began inspecting the firearms on display. An undercover ATF agent at the table answered Stinnett's questions about a nine millimeter handgun. Newsom joined Stinnett at the table. After inspecting the weapon, Stinnett directed Newsom to look at it, hold it, and then instructed her to "[t]ell the man that I like the gun and this is the one that I want." J.A. 555. When Newsom, following these instructions, indicated to the agent that she wished to purchase the firearm that Stinnett had just been holding, Stinnett moved off to another area of the gun show.

Newsom filled out the paperwork required to complete the purchase of the firearm. Initially, she indicated that she was not the actual purchaser of the firearm, but changed her response after being advised of the repercussions of that statement. After completing the paperwork, Newsom realized that she did not have sufficient funds to cover the $129 purchase price and informed the undercover agent that "he didn't give me enough money." Id. at 657. She left the Rabbit Ridge table and was observed talking with both Stinnett and Pearson. Newsom and Pearson returned to the Rabbit Ridge table where he passed additional money to her in a below-the-waist maneuver and then left. Newsom paid for the handgun and a box of ammunition. When her background check was

4

complete, Newsom, Stinnett, Pearson, and the others left the gun show.

Once the party exited the arena, they separated into the same traveling groups as before. Newsom and Odom were stopped by law enforcement officers approximately one-quarter mile from the gun show. Newsom was questioned about her attendance at the show and the firearm she had purchased. At first, Newsom claimed that she had purchased the weapon for herself but later admitted that she had purchased it for Stinnett. Stinnett and Pearson were interviewed by police in the gun show parking lot; both denied knowing Newsom or having any involvement in her purchase of a firearm.

On June 23, 2005, after a two-day trial, a jury returned guilty verdicts on all counts for Pearson and Stinnett. Pearson was sentenced to 51 months imprisonment while Stinnett was sentenced to 57 months imprisonment.

## II.

We first consider Pearson's individual challenges to his convictions.

## A.

First, Pearson asserts that the district court erred in refusing to grant a severance because the seriousness of the two

5

additional charges against Stinnett, and the testimony related to those charges, prejudiced the jury against Pearson and compromised his right to a fair and impartial trial.  We disagree.

We review a decision by the district court to grant or deny a motion for severance for an abuse of discretion.  See United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989).  Generally, it is presumed that "individuals indicted together should be tried together."  United States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001) (internal quotation marks omitted).  A defendant moving for severance bears the burden of proving that a joint trial would be so unfairly prejudicial as to cause a miscarriage of justice. See United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995).

Pearson contends that severance was required because the charge that Stinnett had influenced a witness "inferred an act or threat of violence ... toward the Government's only material witness."  Opening Br. of Appellants at 15.  We conclude that the district court did not abuse its discretion.  "[I]nflammatory evidence ... admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, prove substantial prejudice in the latter's trial."  United States v. Zalman, 870 F.2d 1047, 1053 (6th Cir. 1989) (internal quotation marks omitted).  In this vein, we note that the district court repeatedly emphasized during jury instructions that evidence concerning the witness influence charges

applied only to Stinnett. See United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998) (noting that a jury is presumed capable of following cautionary instructions about potentially prejudicial evidence). Moreover, this was not a highly complex case: there were only two defendants, four charges, and a limited number of witnesses.

## B.

Next, Pearson contends that the district court abused its discretion in admitting evidence that he had previously been convicted of a felony. He maintains that because status as a felon was not a required element of either offense with which he was charged, evidence of his prior conviction was inadmissible under Rule 404(b) of the Federal Rules of Evidence.

We review evidentiary rulings by a district court for abuse of discretion. See United States v. Leftenant, 341 F.3d 338, 342 (4th Cir. 2003). Though inadmissible solely to prove the character of a defendant, evidence of other crimes, wrongs, or acts "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271-72 (4th Cir. 2001) (internal quotation marks omitted). Such evidence is

admissible if it is necessary, reliable, and relevant to an issue other than the defendant's character.  See United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997).  If the prior act evidence meets these criteria and its probative value is not substantially outweighed by its prejudicial effect, it may be admitted.  See id.

Here, Pearson was convicted of providing a false statement in connection with the purchase of a firearm and unlawfully causing a licensed firearms dealer to maintain false records.  The district court concluded that the existence of a prior felony demonstrated Pearson's motivation for participating in the charged criminal conduct and inducing a third party to purchase a firearm.  This ruling was not an abuse of discretion.

## III.

Both Pearson and Stinnett challenge the sufficiency of the evidence to support their convictions for providing false statements in connection with the purchase of a firearm and unlawfully causing a licensed firearms dealer to maintain false records.  They base this claim on the fact that Newsom, the Government's principal witness, admitted that parts of her testimony were untruthful.

When reviewing a challenge to the sufficiency of the evidence, we consider whether the evidence, taken in the light most favorable to the Government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable

doubt. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc). Thus, a defendant challenging his conviction based upon the sufficiency of the evidence "bears a heavy burden," United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted), as "a decision [to reverse for insufficient evidence] will be confined to cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978). With these principles in mind, we conclude that the evidence was sufficient to support both Pearson's and Stinnett's convictions.

Pearson's and Stinnett's challenge rests upon the credibility and reliability of Newsom. On direct examination, Newsom's testimony was supportive of the Government's allegations. On cross-examination, however, she recanted portions of her testimony. The inconsistencies in her testimony were only partially rehabilitated by the Government during redirect examination. At that time, Newsom also admitted that she was afraid of both defendants and of the Government.

However troubling such inconsistencies are, we must remember that it is the role of the jury to review the credibility of the witnesses, weigh the evidence, and resolve any conflicts in the evidence presented. See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997); Burgos, 94 F.3d at 862-63. Therefore, when, as

9

here, the evidence supports different reasonable interpretations, the jury decides which version to believe. See Wilson, 118 F.3d at 234; Burgos, 94 F.3d at 862. Accordingly, we affirm the convictions of Pearson and Stinnett.

IV.

Separately, Stinnett challenges the sufficiency of the evidence supporting his conviction for being a felon in possession of a firearm.[1] As above, we review the evidence in the light most favorable to the Government and consider whether it was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. See Burgos, 94 F.3d at 862-63.

Section 922(g)(1) prohibits a convicted felon from knowingly possessing a firearm in or affecting commerce. See United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995) (en banc). Because Stinnett stipulated that he had been previously convicted of a felony and that the firearm had moved in interstate commerce,[2] the

_____

[1]In the "Summary of Argument" portion of Appellants' brief, Stinnett also contends that there was insufficient evidence to support his conviction for influencing a prospective witness to provide false testimony. However, Stinnett does not otherwise support this claim. See Fed. R. App. P. 28(a)(9)(A). He has therefore waived the claim, and we do not consider it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

[2]Stinnett did not stipulate that the item he handled at the Rabbit Ridge table was a "firearm" as defined by federal law, and

10

Government was required to prove that Stinnett knowingly possessed a firearm.  See id.  Stinnett contends that there was insufficient proof on this element.

Possession of a firearm sufficient to establish a violation of § 922(g)(1) may be actual or constructive.  See United States v. Scott, 424 F.3d 431, 435 (4th Cir.), cert. denied, 126 S. Ct. 779 (2005).  Actual possession is defined as physical control over property.  See id.  A person has constructive possession of an item if he knows of its presence and exercises or has the power to exercise dominion and control over it.  See id.

Abundant evidence in the record demonstrates that Stinnett constructively possessed the firearm purchased by Newsom.  Stinnett handled the firearm, questioned an undercover ATF agent about it, instructed Newsom to purchase it, and provided her the money necessary to do so.  This evidence is clearly sufficient to support a jury determination that Newsom acted as Stinnett's agent when she purchased the firearm and therefore that he exercised constructive possession of it.

---

he challenges on appeal the sufficiency of the evidence supporting a finding that it was.  Because the undercover ATF agent who was working at the table testified that the firearms on display were operable, we conclude that the evidence presented was sufficient. See 18 U.S.C.A. § 921(a)(3)(A) (West 2000).

11

V.

For the reasons set forth above, we affirm the convictions of both Pearson and Stinnett.

AFFIRMED