**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ghazi H. QAISI and Abdul M. Qaisi,
Defendants-Appellants.**

**No. 85–5274.**

United States Court of Appeals,
Sixth Circuit.

Decided Dec. 19, 1985.
Argued Oct. 9, 1985.

Frank E. Haddad, Jr. (argued), Louisville, Ky., for defendants-appellants.

Ronald E. Meredith, U.S. Atty., Alexander T. Taft, Jr. (argued), Louisville, Ky., for plaintiff-appellee.

Before MARTIN and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Abdul Qaisi and Dr. Ghazi Qaisi appeal a guilty plea under Fed.R.Crim.P. 11(a)(2) seeking dismissal of an indictment charging perjury for making material false statements to the Immigration and Naturalization Service. Dr. Ghazi Qaisi is a naturalized American citizen. His brother, Abdul Qaisi, was born in Jerusalem and came to this country in August, 1983. This criminal prosecution grew out of Abdul Qaisi's attempt to become a naturalized United States citizen, when he and his wife, Barbara Qaisi, appeared before an Immigration and Naturalization Service examiner on October 29, 1984.

Abdul Qaisi and Barbara Qaisi had, at best, a stormy marital relationship. Barbara, a United States citizen, was Abdul's ticket to citizenship, if their marriage was valid at its inception. An earlier hearing had been held to determine this question, and the examiner concluded the marriage was valid. Shortly thereafter, however, Barbara Qaisi withdrew her Relative Visa Petition because of their marital difficulties. This led to the denial of Abdul Qaisi's application for citizenship on September 21, 1984.

Barbara Qaisi then sought dissolution of the marriage, but Dr. Qaisi intervened in an effort to save his brother's citizenship chances. Dr. Qaisi told Barbara that if she would remain married to Abdul until he received permanent resident status, he would buy her some new furniture and pay her regular bills. Barbara rebelled at this idea and contacted the Federal Bureau of Investigation in mid-October 1984. Subsequently, she became a government informer and agreed to assist in the investigation of what appeared to be a fraudulent attempt to gain citizenship.

With a sound recorder attached to her body, she met with Dr. Qaisi and Abdul Qaisi on October 1, 1984. At that meeting she was persuaded not to file for divorce and to remain married to Abdul until after he became a citizen. She also agreed to refile the Relative Visa Petition and to testify at the immigration hearing that she and Abdul were still living together even though they were not. In return for her cooperation, Dr. Qaisi agreed to pay her $2,500.

The hearing on the refiled Relative Visa Petition was held on October 29. Pursuant to plan, Abdul and Barbara testified that they were currently living together as man and wife and had resolved their marital difficulties. This was the extent of their testimony at the hearing.

On December 4, 1984, a four-count indictment was returned against Dr. Ghazi Qaisi and Abdul Qaisi. Count one charged that Dr. Ghazi Qaisi and Abdul Qaisi had conspired to violate 18 U.S.C. § 1001, by conspiring to make a material false statement. Court two charged that Abdul Qaisi violated 18 U.S.C. § 1001 by making a material false statement. Count three charged that Dr. Ghazi and Abdul Qaisi violated 18 U.S.C. § 1622 by suborning the false testimony of Barbara Qaisi. Count four charged that Abdul Qaisi violated 18 U.S.C. § 1621, by committing perjury.

Upon the facts before us, materiality of the false statements must be established to support convictions under these statutes. We agree with the statement in *United States v. Greber*, 760 F.2d 68, 73 (3d Cir. 1985):

> [W]e held that materiality is an essential element of the perjury statute.... We see no reason why the same burden should not be imposed on the prosecution in a false statement case as well.... We hold, therefore, that materiality is an essential element of a § 1001 offense....

Dr. Qaisi and Abdul Qaisi make the contention, with which we must regrettably agree, that although the statements made

at the October 29 hearing were false they were not material to the issue at hand.

The only issue upon which Abdul's application for citizenship turned was whether his marriage on July 19, 1984 was pretextual. 8 U.S.C. § 1255. Decisions from the Immigration and Naturalization Service and the district courts have universally held that the viability of a marriage is not a material factor in deciding to confer or deny an immigration benefit. *Matter of Boromand,* 17 I & N 450 (BIA 1980); *Chan v. Bell,* 464 F.Supp. 125 (D.D.C.1978). In *Chan, supra* at 128, the court found that

> [n]o rule or regulation issued by the Attorney General or the Immigration and Naturalization Service requires the existence of a "viable" marriage as a precondition to the grant of immediate relative status.

In *Dabaghian v. Civiletti,* 607 F.2d 868 (9th Cir.1979), it was concluded that the material inquiry in deciding whether to grant permanent residence status is the validity of the marriage from its inception, not the viability. The *Dabaghian* court stated, at 607 F.2d at 871, that

> Under § 245 of the Act, 8 U.S.C. § 1255, the Attorney General may "in his discretion" adjust an alien's status to that of a permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

> But under § 246 of the Act, 8 U.S.C. § 1256, if it later "shall appear to the satisfaction of the Attorney General that the [alien whose status was adjusted under § 1255] was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken."

Dabaghian's purported ineligibility turns upon whether he was the "spouse" of an American citizen at the time of adjustment of status. If he was, he was eligible then to receive permanent-resident status, not subject to any quota. § 201(b) of the Act, 8 U.S.C. § 1151(b). The word "spouses" in § 201(b) includes the parties to all marriages that are legally valid and not sham. There is no exception for marriages that the INS thinks are "factually dead" at the time of adjustment. For the INS to give such an interpretation to "spouses" and for the Attorney General to be satisfied that Dabaghian was not a "spouse" are abuses of discretion. Since no other reason for ineligibility under § 245 of the Act has been alleged or proven, there can be no rescission of Dabaghian's permanent-resident status.

The assumption, by the government, of the validity of the Qaisi marriage lead to the omission of any reference in the record to material facts or statements that were untrue. The indictment charged the defendants with making false statements about the current viability of the marriage and premised materiality on viability. At the pretrial hearing the district court and the United States Attorney acknowledged that the indictment did not charge a sham marriage, and the district court confirmed that the immigration examiner had inquired into the viability of the marriage when the issue he should have been pursuing was the sham marriage. Finally, at the pretrial hearing, the United States Attorney acknowledged the marriage was valid at its inception, and the immigration examiner acknowledged that he had already approved the Qaisis' petition once, concluding it was a valid marriage under the laws of Kentucky.

Because the government has failed to establish that there was a false statement that was material to the issue at hand, we have no alternative but to vacate the judgment and remand the case for dismissal of the indictment.