UNITED STATES of America,
Plaintiff–Appellant,

v.

Bharesh D. DEDHIA, Defendant–
Appellee.

No. 96–3788.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 27, 1997.

Decided Jan. 22, 1998.

Phillip J. Tripi (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for Plaintiff–Appellant.

Richard G. Lillie (briefed), Gretchen A. Holderman (argued and briefed), Lillie, Ph.D. & Associates, Cleveland, OH, for Defendant–Appellee.

Before: CONTIE, DAUGHTREY, and COLE, Circuit Judges.

DAUGHTREY, Circuit Judge.

The defendant, Bharesh D. Dedhia, was convicted by a jury of six counts of immigration-related fraud and making false statements. After trial, the district court granted the defendant's motion to arrest judgment on the two false-statement charges in counts five and six of the indictment, citing insufficiency of the indictment, and ordered a new trial on the first four counts, based on an error that resulted when the issue of materiality was not submitted to the jury as required by *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The government appeals, seeking reversal of the order vacating two counts of the conviction and a remand for reconsideration of the order granting a new trial on the other four counts. After careful study, and particularly in light of our recent decision in *United States v. Frost*, 125 F.3d 346 (6th Cir.1997), we are convinced that all six convictions should be reinstated and the case remanded for sentencing.

### PROCEDURAL AND FACTUAL BACKGROUND

Bharesh Dedhia, a native of India, came to the United States on a non-immigrant visitor's visa in January 1990, after finishing

medical school in India. Despite the fact that the visa was for six months only and restricted Dedhia from working while in the United States, once here he began applying for surgical residency programs.

On May 31, 1990, Dedhia married Rupal Patel, a naturalized United States citizen from India, in a civil ceremony in Illinois. The marriage had been arranged by both families at the initiation of Dedhia's sister, after the couple had spent only a few hours together. Because of Hindu tradition, the civil ceremony was considered merely an engagement, and the couple would not consider themselves to be married until a religious ceremony was performed. Despite repeated attempts by the "bride" and her family to schedule a Hindu wedding ceremony, it never took place. Nevertheless, after the civil ceremony, Dedhia changed his status to conditional permanent resident, based on his marriage to a United States citizen. Conditional residence entitled Dedhia to a conditional alien registration card ("green card").

A month or so after the civil ceremony, Dedhia moved to Cleveland to begin a surgical residency program, leaving Patel behind in Chicago. As time went on, she noticed that he began to distance himself from her, postponing any discussion of the Hindu ceremony and urging her to "be patient." Both parties agree that the marriage was never consummated and that the couple never lived together, other than during brief visits.

The conditional resident status of the kind Dedhia had is valid for two years. Before the two years end, a conditional resident must file a I–751 petition to remove the conditions on his or her residence. The petition is usually based on marriage to a United States citizen or permanent resident, and can be filed jointly by the married couple. The petitioner may, however, request a waiver of the joint filing requirement for several reasons: if the conditional resident spouse has been battered, if the United States citizen spouse is deceased, or if the conditional resident "entered into the marriage in good faith, but the marriage was terminated through divorce/annulment." If the Immigration and Naturalization Service approves the petition, it removes the conditions on a resident's status, and grants him or her permanent resident status. If a I–751 petition is not filed, the conditional resident status expires automatically at the end of the two year period.

On June 15, 1992, two months before his conditional status was set to expire, Dedhia filed an I–751 petition to remove the conditions on his residency, basing his request on his May 1990 marriage to Patel. The petition was purportedly filed jointly with Patel, and contained a signature that appeared to be hers. Also on the petition, Dedhia signed a section of the form affirming that "if the conditional residence was based on a marriage, I further certify that the marriage was entered into in accordance with the laws of the place where the marriage took place, and was not for the purpose of procuring an immigration benefit." As a result of the petition, Dedhia was granted a permanent alien registration card.

Several months after the removal of the conditions on his status, Dedhia initiated a breakup with Patel. Patel then commenced divorce proceedings, and a dissolution of the marriage was negotiated. In January 1993, seven months after the I–751 petition was filed, the marriage was invalidated on the grounds of fraud. The Judgment of Invalidity, *which Dedhia signed,* found that

[T]he Respondent, Bharesh Dedhia, purposely and intentionally misrepresented to the petitioner that he would marry her in a civil marriage ceremony as well as under the Hindu religion and that he was interested in her for a life-long relationship as husband and wife in order to obtain his Alien Registration card for the purpose of remaining in the United States and to obtain a contract for his residency in a hospital in Cleveland.

After the marriage was annulled, Patel filed a complaint with the Immigration and Naturalization Service, which began investigating Dedhia for marriage fraud. As part of the investigation, the Immigration and Naturalization Service interviewed Dedhia in February 1994. At the interview, Dedhia provided the Immigration and Naturalization Service agent with two documents to support his contention that his marriage to Patel had

been bona fide. One document was a health insurance application, dated July 16, 1991, purporting to enroll Patel on Dedhia's health insurance. The second was a residential lease renewal dated June 1993, which appeared to have Patel's signature.

At trial, Patel testified that she did not sign either the I-751 petition or the lease renewal agreement. She also testified that she had had no contact with the defendant after the marriage was dissolved in January 1993 and thus could not have signed the lease renewal five months later. The government introduced testimony from a handwriting expert that Patel's signature on the I-751 form was a forgery. In addition, the government put forth testimony by the Chief Financial Officer of the health insurance company that the enrollment form was fraudulent for several reasons: it was never filed with the company for coverage, the form itself did not exist at the time it was purported to have been executed, it contained an incorrect coverage starting date, it contained inaccuracies in the billing clerk's name and number, and it lacked a date stamp.

Dedhia was indicted on six counts of marriage and related immigration fraud. Count one charged that the defendant entered marriage with the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(c). Count two charged that the defendant knowingly presented as true a false statement with respect to a material fact in an application to the Immigration and Naturalization Service, in violation of 18 U.S.C. § 1546(a). This charge was based on the allegation that Dedhia filed the I-751 form with Patel's signature forged and falsely certified that the marriage was not entered into to obtain immigration benefits. Count three charged that the defendant knowingly obtained and accepted an alien registration card, knowing it to have been procured by means of a false claim and fraud, in violation of 18 U.S.C. § 1546(a). Count four charged that the defendant knowingly possessed and used alien registration receipt cards to obtain employment as a surgical resident and to reenter the United States on two occasions, in violation of 18 U.S.C. § 1546(a). Counts five and six, based on the allegedly fraudulent insur-

ance application form and lease renewal, charged that the defendant knowingly and intentionally made false statements in support of his claim that his marriage was not entered into with the purpose of circumventing the law of the United States, in violation of 18 U.S.C. § 1001.

Dedhia was found guilty on all counts. After the verdict, he moved for an acquittal, arrest of judgment, and new trial. The district court issued an opinion denying the motion for acquittal but granting a new trial on counts one through four and arresting judgment on counts five and six.

The court arrested judgment on counts five and six because it concluded that the conduct charged was insufficient to constitute a violation of 18 U.S.C. § 1001. Interpreting a Sixth Circuit case, *United States v. Qaisi*, 779 F.2d 346 (6th Cir.1985), the court concluded that the narrow issue before the court was the *validity* of the marriage *at its inception*, not the continuing *viability* of the marriage. The court held that the fraudulent evidence in counts five and six, the fictitious health insurance application and the forged lease renewal, purported only to show that Dedhia and Patel were still living in a viable marriage, and thus was not material to the underlying marriage fraud charge. Hence, as a matter of law, the court held, the element of materiality could not be proved, and counts five and six never should have gone to the jury.

In granting a new trial on the four remaining counts, the district court found that the recent Supreme Court decision in *Gaudin* had overturned a line of precedent on which the court had based its jury instructions. In *Gaudin*, an 18 U.S.C. § 1001 prosecution as well, the Court held that when materiality is an element in a charged offense, a trial judge's refusal to submit that issue to the jury infringes on the defendant's Sixth Amendment right to a jury trial. 515 U.S. at 522–23, 115 S.Ct. at 2319–20. In the present case, following the precedent of this court up until *Gaudin*, the district court had charged that the issue of materiality was a matter of law for the court, rather than the jury, and instructed the jury that the statements alleged were material.

■ Because the Supreme Court decided *Gaudin* while the present case was pending, *Gaudin* applies retroactively. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The district court concluded that the failure to submit the materiality issue in counts two, five, and six to the jury "abridged Dedhia's right to have a jury determine his guilt as to every element of the crimes with which he was charged," and thus constituted error. The district court further found that because failure to submit the issue of materiality to the jury on count two "cast doubt upon the fundamental fairness associated with count two," the court could not conclude that the error was harmless beyond a reasonable doubt. The court therefore granted a new trial as to count two. Although counts five and six also contained a materiality element that the court did not submit to the jury, the court did not discuss the effect of that error because it had earlier arrested judgment on those counts on separate grounds.

Finally, the court concluded that the erroneous materiality charge on count two, coupled with the erroneous inclusion of counts five and six, tainted the jury's decision-making with regard to the remaining counts (one, three, and four) and warranted a new trial on counts one through four: "Because the counts are so closely intertwined and clearly interrelated, the Court is not convinced beyond a reasonable doubt that the jury could not have relied upon these errors to convict Dedhia of counts one, three and four." The district court thus ordered a new trial on counts one through four.

## I.  MATERIALITY

■ The United States initially contests the order dismissing counts five and six of the indictment. A court may arrest judgment if "the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." Fed.R.Crim.P. 34. Whether an indictment adequately alleges the elements of the offense is a question of law subject to *de novo* review. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173 (6th Cir.1992).

■ Counts five and six of the indictment charged that Dedhia violated 18 U.S.C. § 1001 when he presented a fictitious health insurance application and a forged lease renewal agreement to the Immigration and Naturalization Service to support his claim that his marriage to Patel was not entered into to evade immigration laws. The statute prohibits "knowingly and willfully ... mak[ing] or us[ing] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18 U.S.C. § 1001(a)(3). One of the elements that the government must prove under § 1001 is the materiality of the false statement. *Gaudin*, 515 U.S. at 509, 115 S.Ct. at 2313. A statement is material if it has a natural tendency to influence a decision or function within the jurisdiction of a governmental agency. *Id.*

In arresting judgment on counts five and six, the district court stated that "[i]n order to convict Dedhia pursuant to § 1001, the government had to establish that Dedhia knowingly made false representations to the INS and the representations were material to the underlying fraud charge." The marriage fraud was charged count one under 8 U.S.C. § 1325(c), which makes it a crime for "[a]ny individual [to] knowingly enter into a marriage for the purpose of evading any provision of the immigration laws." In essence, the underlying crime charged was *entering* into a fraudulent marriage, not *being* in a fraudulent marriage. The court ruled that the false statements in the documents were not material to the issue of whether Dedhia had *entered* into the marriage fraudulently, and thus, as a matter of law, the conduct charged in counts five and six was insufficient to constitute a violation of 18 U.S.C. § 1001.

In the ruling, the district court relied on this court's decision in *Qaisi*, a perjury case in an immigration fraud context with similar facts. In *Qaisi*, two brothers who had convinced one of their wives not to seek a divorce and to testify falsely at an immigration hearing that the couple was still living together, so that the husband could obtain permanent residence status, were tried and convicted under 18 U.S.C. § 1001. This

court reversed the convictions because the statements regarding the current living arrangements, while false, were not material. 779 F.2d at 347–48. We noted that under 8 U.S.C. § 1255, a "pretextual" marriage to a United States citizen cannot support the grant of immigration benefits. *Id.* at 348. In overturning the conviction, we distinguished between false statements about the validity of a marriage at its inception, which would be material to an inquiry into whether the marriage was pretextual, and false statements about the current viability of a marriage, such as the testimony that the couple was still living together, which are not material to the question of whether the marriage was entered into to obtain immigration benefits. We explained: "[T]he only issue upon which Abdul's application for citizenship turned was whether his marriage ... was pretextual.... The *viability* of a marriage is not a material factor in deciding to confer or deny an immigration benefit." *Id.* (emphasis added). We ultimately held that "although the statements made at the October 29 hearing were false they were not material to the issue at hand." *Id.*

Analogizing to *Quasi*, the district court in the present case made a similar finding:

> Because the viability of Dedhia's marriage to Patel was not at issue, and because the representations Dedhia allegedly made to the INS concerned only the viability of his marriage to Patel and not its validity at inception ... this Court erred when it concluded that the representations were material.

Although the documents at issue could be found to be fraudulent (and indeed the jury must have found them to be false in order to convict on these counts), the district court concluded, they were not material to the issue at hand—whether the marriage was bona fide when it was entered into.

■ With due respect for the district court's analysis, we conclude that *Qaisi* is easily distinguished from the case at hand. In *Qaisi*, this court noted that:

> The indictment charged the defendants with making false statements about the current viability of the marriage and premised materiality on viability. At the pre-trial hearing the district court and the United States Attorney acknowledged that the indictment did not charge a sham marriage, and the district court confirmed that the immigration examiner had inquired into the viability of the marriage when the issue he should have been pursuing was the sham marriage. Finally, at the pretrial hearing, the United States Attorney acknowledged the marriage was valid at its inception.

779 F.2d at 348. Here, in contrast, the defendant was charged with entering into a sham marriage, and the government was specifically investigating charges that the marriage had been pretextual. The government does not merely premise materiality on the viability of the marriage, as it mistakenly did in *Qaisi*, but rather argues that the false representations about the continuing viability of the marriage were submitted to show that the marriage was not a sham. Indeed, the false statements were specifically offered by the defendant to rebut the charge, filed by Patel and supported by the marriage annulment, that the marriage was not bona fide at its inception. The perjury in *Qaisi*, in contrast, was offered by the brothers to rebut the charge that the marriage was not currently viable.

Moreover, subsequent to our opinion in *Qaisi*, Congress enacted the Immigration Marriage Fraud Amendments, Pub.L. No. 99–639 (1986), codified at 8 U.S.C. § 1186a. This law instituted a two-year conditional period before permanent residency based on marriage is granted and requires that those filing for permanent residency status through the normal I–751 process be married at the end of that two-year period. 8 U.S.C. § 1186a(b)(1). In addition, the regulations allow evidence of the current viability of the marriage to be considered when reviewing an immigrant's petition for permanent residency:

> (5) Documentation. Form I–751 shall be accompanied by *evidence that the marriage was not entered into for the purpose of evading the immigration laws* of the United States. Such evidence may include:

(i) Documentation showing joint ownership of property;

(ii) Lease showing joint tenancy of a common residence;

(iii) Documentation showing commingling of financial resources;

(iv) Birth certificates of children born to the marriage;

(v) Affidavits of third parties having knowledge of the bona fides of the marital relationship, or

(vi) Other documentation establishing that the marriage was not entered into in order to evade the immigration laws of the United States.

8 C.F.R. § 216.4(a)(5) (emphasis added). These regulations thus allow for consideration of a couple's actions during a marriage in determining whether that marriage was fraudulent at its inception.

In this case, the new regulations are instructive, but not dispositive. Dedhia did not offer the false documents when he filed his I–751, but rather offered the documents when he was later investigated by the Immigration and Naturalization Service. As in *Qaisi*, the counts in questions five and six allege violations of 18 U.S.C. § 1001, not marriage fraud. Nevertheless, because the INS considers evidence of the current viability of a marriage in determining whether it was fraudulent at its inception, the documents in question are material as circumstantial evidence of the initial fraud. Although Dedhia did not offer the documents during the I–751 review process, the fact that the INS expects applicants to supplement their permanent residency application with these types of evidence helps establish the materiality of the documents in counts five and six. Dedhia specifically offered the documents to influence the investigation into whether his marriage had been a sham, and a jury could clearly find that those false statements were material to the underlying charge of sham marriage. Thus, the district court erred in ruling that as a matter of law counts five and six did not charge an offense because the false documents could not be material.

## II. JURY INSTRUCTIONS

The intervening Supreme Court decision in *Gaudin* requires us not only to determine whether there was error in the jury charge, but also whether the error requires reversal. *See, e.g., United States v. Tandon*, 111 F.3d 482, 488 (6th Cir.1997) (discussing the effect of the *Gaudin* decision on the many cases pending in circuits in which it was well established, at the time of the trial, that materiality was a question of law). The Supreme Court has recently held in *Johnson v. United States*, ––– U.S. –––, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), that where a defendant has failed to object, before *Gaudin*, to the district court's refusal to submit the issue of materiality to the jury, plain error review under Federal Rule of Criminal Procedure 52(b) applies. *See also United States v. Rogers*, 118 F.3d 466 (6th Cir.1997) (applying plain error in light of *Johnson*). Plain error applies to the failure to object at trial even though, at the time of trial, the law was well-settled and such an objection would have been futile. *Johnson*, ––– U.S. at –––, 117 S.Ct. at 1548 ("The seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure"); *Rogers*, 118 F.3d at 471.

There are four prongs to the plain error analysis under Rule 52(b). *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Before this court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. 507 U.S. at 732, 113 S.Ct. at 1776–77; Fed.R.Crim.P. 52(b). If those three factors are met, then this court may exercise its discretion to notice a forfeited error (4) if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." 507 U.S. at 732, 113 S.Ct. at 1776–77.

The first prong is clearly met in this case because the failure to submit materiality to the jury is error under *Gaudin*, and under *Griffith*, a new rule for the conduct of criminal prosecutions is applied retroactively to all cases pending on direct review. *Johnson*, ––– U.S. at –––, 117 S.Ct. at 1549. The second prong, that the error is plain, is also

met. Plain is synonymous with "clear" or "obvious." *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777–78. In *Johnson* the Supreme Court held that "in a case such as this—where the law at the time of the trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration," and found that a *Gaudin* error was plain. —— U.S. at ——, 117 S.Ct. at 1549.

 Assessing the remaining two prongs is more difficult. An error "affecting the defendant's substantial rights" has been described by the *Olano* court as "error … [that has] affected the outcome of the district court proceedings." 507 U.S. at 734, 113 S.Ct. at 1777–78. Even if the defendant in this case could establish the existence of such a prejudicial error, he would still be required to show that the error was so prejudicial that it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id.* Because the evidence of materiality is overwhelming in this case, we conclude that the third and fourth prongs simply cannot be met.

We are led to this conclusion by the recent *Frost* decision, in which this court found no plain error in the failure to submit the materiality element to the jury on a count of making a false declaration to the grand jury (a violation of 18 U.S.C. § 1623). 125 F.3d at 387. In *Frost,* we followed the plain error analysis set forth in *United States v. Johnson,* as the other post-*Johnson* panels in this circuit have done in reviewing *Gaudin* errors, and found no plain error because materiality had not been controverted and the evidence of materiality was overwhelming. 125 F.3d at 386–87.

The *Frost* court held that "[a]lthough a false statement must have the capacity to influence a decision, it does not have to be actually influential in order to be material." 125 F.3d at 387. Under this standard, then, we need not even find that the false documents influenced the INS investigators, but only that the documents could have influenced them. Given that the INS regularly considers such evidence in reviewing permanent residency applications, these documents clearly had a capacity to influence their in-

vestigation into whether Dedhia's marriage was a sham.

In view of the rulings in *Johnson* and *Frost,* we conclude that the error committed by the district court in failing to submit the question of materiality to the jury was not reversible error and that the grant of a new trial was therefore unnecessary.

## CONCLUSION

For the reasons set out above, we RE-VERSE the judgment of the district court and REINSTATE the jury verdict on all counts of the indictment. The case is RE-MANDED to the district court for sentencing.