**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0439n.06
Filed: May 26, 2005

No. 02-5206

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| BLAKE LEE WADDELL, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

**Before: DAUGHTREY and MOORE, Circuit Judges, and CALDWELL,**[*] **District Judge.**

**KAREN K. CALDWELL, District Judge.** Defendant-Appellant Blake Lee Waddell ("Waddell") appeals his conviction on one count of knowingly making a false statement to Federal Bureau of Investigation ("FBI") agents in violation of 18 U.S.C. § 1001 for which Waddell was sentenced to eighteen months of probation. For the following reasons, we **AFFIRM** the district court's judgment.

## I. BACKGROUND.

### A. The FBI Investigation.

_____

[*]The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

In 1999, the FBI and various Tennessee local and state law enforcement agencies began investigating "chop shops" and narcotics trafficking in Hamblen, Cocke and Jefferson Counties, Tennessee. J.A. at 78, 115. A "chop shop" is a "place where stolen automobiles are stripped of their salable parts." Merriam-Webster's Collegiate Dictionary 202 (10th ed. 1998).

At the time, Waddell was a Jefferson County Deputy Sheriff. J.A. at 76, 81. One of the subjects of the investigation was Brian Knight ("Knight") who owned a garage in Hamblen County. J.A. at 79, 116. When one of the FBI's confidential informants was compromised, the FBI immediately began preparing applications for search warrants for several locations, including Knight's garage and residence. The FBI, in conjunction with state and local law enforcement agencies, dispatched task force officers to perform surveillance of various locations until the warrants were obtained. J.A. at 117-18.

On July 6, 1999, an FBI agent notified Chief Deputy G.W. McCoig ("McCoig") of the Jefferson County Sheriff's Department that the FBI was attempting to secure search warrants for Knight's residence and garage. J.A. at 79-80. McCoig went to the Jefferson County Sheriff's Department, arriving at approximately 2:00 p.m., and informed Waddell and a detective on duty that search warrants were being obtained for Knight's "places" and instructed them not to come to those locations unless he called them. J.A. at 80-81, 101. Waddell and Knight were close friends in grammar school and middle school and had renewed their friendship after high school. J.A. at 173-74, 187. McCoig was aware of Waddell's relationship with Knight. J.A. at 76.

McCoig then left the Sheriff's Department to begin surveillance of Knight's residence. J.A. at 81. He drove to Knight's residence in approximately ten minutes, arriving at approximately 2:30 p.m. J.A. at 83, 104. Shortly after McCoig arrived at the residence, Waddell arrived in his patrol

2

car. J.A. at 84. McCoig instructed Waddell to leave and McCoig continued to watch the residence. J.A. at 84-85. On the same day, FBI Special Agent Rufas Hood ("Hood") also observed Waddell in his patrol car near Knight's residence before the searches were executed. J.A. at 119-20.

That evening, after obtaining search warrants for Knight's garage and residence, the FBI executed the searches. J.A. at 150-51. The agents seized drug paraphernalia, vehicle parts, and tools from Knight's garage. J.A. at 151. During the search of Knight's residence, the agents seized drug paraphernalia, burglary tools, and a kit to stamp vehicle identification numbers. J.A. at 121.

## B. Waddell's Statements to the FBI Agents.

On July 12, 1999, FBI Special Agents Hood and Kevin Keithley ("Keithley"), along with McCoig, interviewed Waddell at the Jefferson County Sheriff's Department for approximately one or two hours. J.A. at 122, 127-28, 151-52. Waddell told the agents that he had called Knight on the day of the searches and that Knight was in South Carolina on that date. J.A. at 124, 152. Waddell also stated that he had traveled to Mississippi with Knight in June 1999 in a black 1998 Suburban and that Waddell "believed [the Suburban] was put together with some stolen parts." J.A. at 87, 209. Waddell said that he knew Knight smoked marijuana and that he had observed marijuana in Knight's residence. J.A. at 88, 124.

The agents asked Waddell "if he knew where Knight was." J.A. at 126. According to Hood, Waddell responded "to the effect that, no, I've had no contact with him." J.A. at 126. Keithley also testified that Waddell said that he "did not know where [Knight] was." J.A. at 155. McCoig testified that Hood asked Waddell if he knew where Knight was and that Waddell said he did not. J.A. at 89. Waddell testified that the agents asked him if he knew where Knight was on July 12, 1999 – the date of the interview – and that he told them he had no idea. J.A. at 190.

3

Waddell was indicted on one charge of unlawfully giving notice of a scheduled law enforcement search in violation of 18 U.S.C. § 2232 and one count of knowingly making a false statement to FBI agents in violation of 18 U.S.C. § 1001. J.A. at 13 (Superseding Indictment). With regard to the § 1001 charge, the indictment specifically alleged that Waddell falsely stated in an interview with FBI agents that he did not know Knight's whereabouts. J.A. at 14.

## C. The Trial.

Before trial, Waddell moved to prohibit the government from introducing the search warrants relating to Knight's property and any evidence that Knight was investigated for and convicted of drug trafficking. J.A. at 23 (Motion in Limine). The magistrate judge entered an order denying the motion, reasoning that, because Waddell was charged with notifying Knight of an impending search and seizure, the warrants were relevant to establish the property authorized to be seized and to Waddell's intent in calling Knight on the day of the searches. J.A. at 39-40. Over Waddell's objections, the district court adopted and affirmed the magistrate's order. J.A. at 48.

At trial, the government introduced Waddell's cellular telephone records which showed that Waddell called Knight five times on the day of the searches between the hours of approximately 3:00 p.m. and 9:40 p.m.. J.A. at 156.

McCoig testified that, after the July 12th FBI interview, McCoig drove Waddell home and that Waddell:

> looked over at me and asked me if I really did want to know where Brian Knight was; and I asked him again, or told him, surely, you didn't lie to the FBI agents; and he said, well he had called me earlier to see what was going on, and he's in Mississippi.

J.A. at 89.

Waddell testified that he truly did not know Knight's location on the date of the interview.

4

J.A. at 190. He testified that, in the car after the interview, he told McCoig he had remembered that Knight had called him on his cell phone a few days before the interview and that Knight had given Waddell a phone number where he could be reached. J.A. at 190. Waddell testified that he told McCoig that the reason he did not tell the agents about the phone call from Knight at the time of the interview was that he had simply forgotten about the call. J.A. at 190. Waddell admitted that he called Knight on the date the searches were conducted but stated that his purpose was not to interfere with the search but to tell Knight "he was in trouble" and "he needed to come home to find out what was going on." J.A. at 194-97.

A jury convicted Waddell of making a false statement to the FBI in violation of 18 U.S.C. § 1001 and acquitted him of unlawfully giving notice of the searches in violation of 18 U.S.C.§ 2232. J.A. at 56. Waddell filed a motion for a judgment of acquittal or in the alternative a new trial. J.A. at 57. The court denied Waddell's motion and sentenced him to eighteen months of probation. J.A. at 15.

## II. ANALYSIS.

### A.      Sufficiency of the Evidence.

As his first issue on appeal, Waddell argues that there was insufficient evidence to support his conviction for giving a false statement to the FBI. This court reviews de novo a district court's denial of a motion for a judgment of acquittal based on insufficiency of the evidence. *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002). The critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

5

It is a federal crime under 18 U.S.C. § 1001 to knowingly and willfully make any materially false statement in a matter within the jurisdiction of a federal agency. 18 U.S.C. § 1001(a)(2). Waddell contends there was insufficient evidence that his statement to the FBI that he did not know Knight's whereabouts was either false or material.

As to the evidence regarding the falsity of his statement, all four witnesses who were present during the FBI's interview of Waddell, including Waddell himself, testified that the FBI asked Waddell where Knight was and that Waddell told the FBI that he did not know. J.A. at 89, 126 ,155, 190. McCoig further testified that, as he drove Waddell home immediately after the interview, Waddell asked McCoig if he "really did want to know where Brian Knight was" and that Waddell stated that Knight had called him and that Knight was in Mississippi. A rational juror could conclude from this testimony that Waddell knowingly and willfully made a false statement to the FBI when he stated that he did not know where Knight was.

On appeal, Waddell argues that "it *could* be asserted" that, when Waddell stated during his interview with the FBI agents that he did not know where Knight was, he may have simply meant that he did not know the exact location *in Mississippi* where Knight was. Appellant's Brief at 20. Waddell asserts that, if he believed that the FBI agents were asking about Knight's specific whereabouts in Mississippi, then his statement to the FBI that he did not know was true because Waddell did not know exactly where in Mississippi Knight was at the time.

There was, however, absolutely no evidence in the record from which the jury could have found that Waddell understood that the FBI agents were asking whether he knew of Knight's exact location *in Mississippi*. Waddell himself never testified to this. Waddell testified that the reason he told the FBI agents that he did not know Knight's whereabouts was because he thought the FBI

6

agents were specifically asking about Knight's location on July 12, 1999 and/or because he had simply forgotten that Knight had called him in the days before the interview. The jury did not find this testimony credible.

Moreover, with this argument, Waddell does not actually dispute that there was sufficient evidence to convict him of making a false statement. Instead, Waddell argues that a jury *could* have found that Waddell's statement was not false if it had believed that he misunderstood the question asked of him. The fact that a jury *could* have found sufficient evidence to acquit a defendant, however, will not support the overturning of a conviction.

As to the evidence regarding the materiality of Waddell's statement to the FBI that he did not know where Knight was, Keithley testified that this information was material to the FBI's investigation of Knight because "it was very important for [the FBI] to recover the '98 black Suburban that [Knight] was driving" because it was a "stolen vehicle" and "would be used as a very important piece of evidence against [Knight] in his criminal proceedings." J.A. at 153, 155 (Keithley Test.). "A statement is material if it has a natural tendency to influence a decision or function within the jurisdiction of a governmental agency." *United States v. Dedhia*, 134 F.3d 802, 806 (6th Cir. 1998). A rational trier of fact could have found that Waddell's statement that he did not know where Knight was had a tendency to influence the FBI's investigation of criminal activity and seizure of relevant evidence.

### B. Evidentiary Rulings.

As his next argument on appeal, Waddell argues that his conviction should be overturned because of certain evidentiary rulings by the trial judge. This court reviews a district court's evidentiary rulings for an abuse of discretion. *United States v. Jackson-Randolph*, 282 F.3d 369, 375

(6th Cir. 2002). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

Waddell argues that the district court erred in admitting the search warrants relating to Knight's property and in admitting evidence of Knight's criminal activity. Waddell argues that, even if this evidence was relevant, its prejudicial nature outweighed its probative value. According to Waddell, evidence of Knight's criminal activity was highly prejudicial because "[t]he mere suggestion that the defendant, a deputy sheriff, associated with persons involved in criminal activity was enough to raise the danger that the jury might convict him of either of the crimes charged in the indictment simply because of this association." Waddell Br. at 25.

Pursuant to Rule 402 of the Federal Rules of Evidence, "[a]ll relevant evidence is admissible." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A court may, however, properly exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

In reviewing a district court's decision to admit evidence, this court "must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988) (quotation omitted). "The district court has broad discretion in balancing probative value against potential prejudicial impact." *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir.

8

1991).

Waddell was charged with violating 18 U.S.C. § 2232(b) which, at the time of his offense, provided:

> [w]hoever, having knowledge that any person authorized to make searches and seizures has been authorized or is otherwise likely to make a search or seizure, in order to prevent the authorized seizing or securing of any person, goods, wares, merchandise or other property, gives notice or attempts to give notice of the possible search or seizure to any person shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C.A. § 2232(b)(West 1999)(current version at 18 U.S.C. § 2232(c)(West 2000)(effective April 25, 2000)).

The search warrants themselves were relevant to whether any person was authorized to search Knight's property and whether Waddell intended to prevent the authorized seizing of evidence from Knight's property when he called Knight. Likewise, evidence that Knight was actually engaged in criminal activity is relevant to whether, when Waddell called Knight on the day he learned of the searches, his purpose was to warn Knight of a scheduled FBI search.

"'Unfair prejudice,' as used in Rule 403, does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Because the search warrants and evidence of Knight's criminal activities were directly probative of the elements of the crime with which Waddell was charged, the district court did not abuse its discretion in admitting that evidence.

Waddell also contends that the district court erred in permitting McCoig and Hood to testify about Waddell's statements that he had observed marijuana at Knight's residence and that he believed that Knight was driving a vehicle with stolen parts. J.A. at 87-88, 152. Waddell argues

9

that the testimony was inadmissible hearsay. Federal Rule of Evidence 801(d)(2)(A) provides that a statement is not hearsay if it is offered against a party and is "the party's own statement." Waddell's statements which were offered against him regarding his knowledge of Knight's illegal activities were not, therefore, hearsay.

## C. District Court's Interruptions of Testimony.

Finally, Waddell contends that the district court abused its discretion in interrupting the direct examination of two defense witnesses, Waddell's father and former Jefferson County Sheriff Doug Quarles ("Quarles"). The district court interrupted the direct examination of these two witnesses several times asking Waddell's counsel how much longer the examination would last, asking Quarles one question himself, instructing Waddell's counsel to "go into something else," and ending the direct examination of Waddell's father stating, "that's the last question." J.A. at 229.

The conduct of a criminal trial is a matter within the discretion of a trial judge and will not be disturbed absent a clear showing of abuse. *United States v. Wade*, 364 F.2d 931, 936 (6th Cir. 1966). "This discretion extends to commenting on the evidence, questioning witnesses to clarify facts or even elicit facts not yet presented, and moving along the trial by means of interruptions and the imposition of time limits on counsel." *United States v. Gray*, 105 F.3d 956, 964 (5th Cir. 1997).

Pursuant to Federal Rule of Evidence 611(a), the district court is specifically granted authority to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to. . . make the interrogation and presentation effective for the ascertainment of truth" and to " avoid needless consumption of time." These rulings "will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected." *United States v. Terry*, 729 F.2d 1063, 1067 (6th Cir. 1984).

10

According to the trial transcript, the district court permitted Waddell's counsel to examine Waddell's father for approximately one hour. J.A. at 229. On appeal, Waddell proffers no additional evidence to which his father would have testified at trial had the examination not been terminated by the district court. As to Quarles, Waddell's counsel indicated to the district court that he had completed his examination of the witness by stating, "[t]hat's all I have." J.A. at 233. Moreover, at the end of his direct examination, the district court specifically gave Quarles an opportunity to say anything he would like on Waddell's behalf. J.A. at 233.

Waddell argues that the district court's statements in front of the jury minimized his father's testimony and that of Quarles. The district court, however, made no comment in front of the jury regarding the substance of any witness's testimony. The district court's statements to which Waddell objects all fall within the district court's legitimate authority to exercise reasonable control over witness examination and to avoid needless consumption of time. Moreover, even if the district court's statements did minimize the testimony of these two witnesses, Waddell fails to cite to any significant testimony either of these witnesses gave regarding the § 1001 charge for which he was convicted.

The district court did not abuse its discretion to exercise reasonable control over witness examination nor did the districts court's exercise of this control affect the substantial rights of Waddell.

### III. CONCLUSION.

For the foregoing reasons, we **AFFIRM** the district court's judgment.

11